FILED & ENTERED

JAN 31 2012

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY sumlin    DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

| | |
|---|---|
| In re: | Case No.: 2:11-bk-53730-NB |
| JOSE GILBERTO HERNANDEZ AND MARIA JIMENEZ, | CHAPTER 13 |
| | **MEMORANDUM DECISION** |
| Debtor(s). | **(1) DENYING RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(d) BUT CONFIRMING THAT THE STAY HAS TERMINATED AUTOMATICALLY UNDER 11 U.S.C. § 362(c)(3) AND (j), AND** |
| | **(2) DISMISSING THIS BANKRUPTCY CASE WITHOUT PREJUDICE** |
| | Date:    January 31, 2012<br>Time:    2:00 PM<br>Courtroom: 1545 |

At the above-captioned time and place, the Court held a continued hearing on Fiscal Credit Union's ("Fiscal CU's") motion for relief from the automatic stay and objection to the debtors' proposed chapter 13 plan. Earlier hearings were held on the objection to confirmation on December 8, 2011 and January 12, 2012. Appearances were as noted on the record.

Based on the representations and arguments of counsel at the hearing and for

-1-

the reasons stated below, the Court will issue separate orders (1) **DENYING** the motion for relief from the automatic stay under 11 U.S.C. § 362(d)(1) and (d)(4) but **CONFIRMING** that the stay has already terminated automatically under 11 U.S.C. § 362(c)(3) and (j), and (2) **DISMISSING** this bankruptcy case, without prejudice to the filing of another voluntary or involuntary bankruptcy case and without prejudice to any motion in such future case seeking an order that the stay go into effect under 11 U.S.C. § 362(c)(4).[1]

### A. *Background*

This is the debtors' second case pending in one year.  The debtors are attempting to retain their primary residence located at 4916 Lincoln Avenue, Los Angeles, California 90042 (the "Home").  Fiscal CU holds a second deed of trust on the Home.

#### 1. *The First Case*

The debtors filed their first case on March 19, 2010 (2:10-bk-20434-VZ).  On November 17, 2010, the Court confirmed the debtors' chapter 13 plan.

More than a year into their first bankruptcy case, on July 1, 2011, Fiscal CU filed a motion for relief from the automatic stay based on two missed post-petition payments and associated charges, as well as an alleged lack of any equity cushion and declining value of the Home.  *See* Motion (2:10-bk-20434-VZ, Dkt 35).  The debtors disputed the lack of equity but not the missed payments.  *See* Opposition (2:10-bk-20434-VZ, Dkt 35).  Fiscal CU's motion for relief was granted on August 4, 2011.

On September 27, 2011, the chapter 13 trustee filed a motion to dismiss the case due to a $1,667.00 delinquency in plan payments (roughly three months).  On October 20, 2011, the case was dismissed based on the trustee's motion.

#### 2. *The Second Case*

On October 20, 2011, the debtors filed the current chapter 13 bankruptcy case. On November 18, 2011, Fiscal CU filed an objection to confirmation of the debtors' proposed chapter 13 plan asserting that (1) the plan is not feasible and (2) this case was filed in bad faith.  On December 1, 2011 and January 4, 2012, Fiscal CU filed supplemental objections on the bad faith issue.  On January 11, 2012, Fiscal CU filed

---

[1] Unless otherwise indicated, all code, section, and chapter references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

another document, styled as an "Opposition" to the debtors' declarations setting forth the deed of trust payments, alleging among other things that the debtors' declarations show a bad faith disregard for accuracy. On January 4, 2012, Fiscal CU filed a motion for relief from the automatic stay, to which the debtors filed written responses on January 10 and 19, 2012. On January 5, 2012, the debtors filed an amended chapter 13 plan.

### B. *Section 362(d)*

Fiscal CU's motion seeks relief on alternative grounds. Although I rule below that the automatic stay has already terminated under Section 362(c)(3), the courts are spilt on that issue and my interpretation might be overruled. In the present situation I believe it is appropriate to rule on each of Fiscal CU's alternative grounds for relief, including under Section 362(d) as well as Section 362(c).

#### 1. *Section 362(d)(1)*

Fiscal CU seeks relief under Section 362(d)(1), which provides in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief fro the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest . . . [11 U.S.C. § 362(d)(1)]

Fiscal CU's motion alleges that the debtors have not provided proof of insurance. The debtors have now provided such proof. Opposition (2:11-bk-53730-NB, Dkt. 38), Ex. A (evidencing insurance coverage from April 14, 2011 to April 14, 2012).

Fiscal CU's motion alleges that the debtors missed one payment since the filing of their current bankruptcy case. But the debtors appear to have (belatedly) made that payment based on documents included in their opposition papers. *See* Motion (2:11-bk-53730-NB, Dkt 26), pp.8-9; Opposition (2:11-bk-53730-NB, Dkt 32).

Fiscal CU's motion alleges that the Home is declining in value. But that argument is based on Fiscal CU's bare assertion of a "continuing decline of overall real estate market," which is both unsupported and, if true, would not necessarily show a decline in the value of this particular property. Motion (2:11-bk-53730-NB, Dkt 26), p.8.

#### 2. *Section 362(d)(4)*

In the alternative, Fiscal CU seeks relief under Section 362(d)(4), which provides in relevant part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay . . .with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either –
> (A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or
> (B) multiple bankruptcy filings affecting such real property.  [11 U.S.C. § 362(d)(4)]

But the debtors have presented declarations that one of them became very ill during the pendency of their first bankruptcy case and, while he was in the hospital and unable to work, the other debtor took care of him and her business suffered. *See* Declaration of Jose Gilberto Hernandez and Maria Jimenez re: Proof of income (2:11-bk-53730-NB, Dkt. 30).  He has since recovered, both debtors have returned to full time work, and they now believe they can keep current on all plan and mortgage payments. *Id.* Such temporary loss of income is a common (and very reasonable) factual situation among debtors and it fully explains the change in circumstances.

Fiscal CU argues, however, that the debtors had not yet returned to full employment at the time this second bankruptcy case was filed.  Fiscal CU analogizes to 11 U.S.C. § 362(c)(3)(C) which, in the context of a motion to continue the automatic stay, would require "a substantial change in [the debtors'] financial or personal affairs … *since* the dismissal of [their first bankruptcy case]" (emphasis added) or else this second case would be "presumptively filed not in good faith …."  11 U.S.C. § 362(c)(3)(C)(i)(III). Assuming for the sake of discussion that the same presumptions should apply under Section 362(d)(4) as under 362(c)(3)(C), any such presumption "may be rebutted by clear and convincing evidence to the contrary" and the debtors have offered explanations that clearly and convincingly rebut any such presumption.  11 U.S.C. § 362(c)(3)(C). If anything, the current state of the record shows that the debtors filed this second bankruptcy case in a good faith attempt to resume making monthly payments to Fiscal CU and the holder of their first deed of trust, as they did for most of their first bankruptcy case (albeit with some difficulty).  In sum, Fiscal CU has not established that the debtors filed this second bankruptcy case as part of a scheme to

"hinder, delay, or defraud creditors" as required by Section 362(d)(4).[2]

### C. *Section 362(c)(3)*

Fiscal CU argues that the automatic stay has already terminated under 11 U.S.C. § 362(c)(3) because the debtors did not file any motion to continue the stay in this second bankruptcy case and the period in which they could do so has expired. In addition, Fiscal CU argues that the termination of the automatic stay applies not just as against the debtors but also as to the Home, and therefore (absent another bankruptcy case) it can proceed with its nonbankruptcy remedies, such as foreclosing on the Home.

The Bankruptcy Judges of this Court disagree on these issues. I agree with Fiscal CU.

Fiscal CU's request for clarification is properly made pursuant to Section 362(j), which provides in full:

> On request of a party in interest, the court shall issue an order under subsection (c) confirming that the automatic stay has been terminated.

Section 362(c)(3) provides, in relevant part:

> [I]f a single or joint case is filed by or against a debtor . . . and if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed . . .

---

[2] Fiscal CU's other allegations reflect an understandable frustration that any creditor may feel when attempting to collect from debtors in difficult financial straits, and whose record-keeping and attention to detail is not what it should be, but the debtors' alleged acts and omissions are insufficient to warrant relief under Section 362(d)(4). Fiscal CU asserts that during the pendency of the debtors' first case, it attempted to "work with" the debtors, including voluntarily setting aside a completed foreclosure sale after the debtors informed Fiscal CU that the foreclosure sale was conducted in violation of the automatic stay. After the debtors defaulted on payments to Fiscal CU in the debtors' first case, Fiscal CU asserts that it sent the debtors' attorney a letter regarding the default in order to give the debtors "a chance to keep their property" but allegedly the debtors did not respond. Fiscal CU asserts that, after it was granted relief from the automatic stay in the debtors' first bankruptcy case, it tried to negotiate a work-out with the debtors to no avail. Fiscal CU asserts that the debtors purposefully failed to make plan payments in their first case so that the trustee would move to dismiss the case and enable to the Court to order dismissal without a bar to filing another bankruptcy case under 11 U.S.C. § 109(g)(2) (which bars repeat bankruptcy cases if "the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay …"). Fiscal CU alleges that in this case the debtors have demonstrated a bad faith disregard for accuracy, including filing documents that listed social security income that had ceased, variations in the stated dollar amount of monthly contributions being received from relatives, and different statements regarding which relative was making the contributions.

These and other allegations by Fiscal CU might or might not illustrate that the debtors' negotiating style, record-keeping, and attention to detail are not what they should be, but they do not show any "scheme" to delay, hinder, or defraud creditors within the meaning of Section 362(d)(4). To the contrary, they are entirely consistent with struggling debtors making every effort to pay Fiscal CU but being unable to do so after a major illness and loss of employment.

>  (A) the stay under subsection (a) with respect to any action taken
>  with respect to a debt or property securing such debt or with
>  respect to any lease shall terminate *with respect the debtor* on the
>  30th day after the filing of the later case . . . [11 U.S.C. § 362(c)(3),
>  emphasis added]

### 1. *Differing interpretations*

Some courts interpret the above-quoted phrase – "the stay … shall terminate *with respect to the debtor*" – to mean that the stay only terminates as to the debtor *in personam* (and perhaps property of the debtor), as distinguished from property of the bankruptcy estate. *See, e.g., In re Rinard,* 451 B.R. 12 (Bankr. C.D. Cal. 2011). But for the following reasons I believe that the phrase "with respect to the debtor" was intended by Congress to distinguish between co-debtors in a joint case, so that one spouse is not unduly prejudiced by the prior bankruptcy of the other spouse. *See In re Reswick,* 446 B.R. 362 (9th Cir. BAP 2011).

### 2. *Statutory Interpretation*

According to *Rinard*, the meaning of the phrase "with respect to the debtor" is plain. I disagree.

Supposing for the sake of argument that the phrase is clear in isolation (which I do not concede), it must be read in context. *See Reswick*, 446 B.R. at 367 (citing authorities). A non-bankruptcy example will illustrate.

If I say, "will you marry me?" that sounds like an unambiguous proposal. But my meaning is very different if I am asking a priest to officiate instead of asking a prospective spouse to wed me.

Interpretation of section 362(c)(3) is analogous. Context is everything.

### 3. *Avoiding surplusage*

As noted above, some courts interpret the termination of the stay "with respect to the debtor" to mean that creditors may seek remedies only against the debtor *in personam* (as distinguished from remedies against property, *i.e., in rem*). *See Reswick*, 446 B.R. at 366 (citing cases). But in context the statute provides that the stay is terminated "with respect to ... *property* securing [a debt] … with respect to the debtor" – what does the reference to "property" mean if the stay is only terminated *in personam*? 11 U.S.C. § 362(c)(3)(A) (emphasis added).

As *Reswick* points out, the reference to "property" would be surplusage. That is

-6-

anathema in statutory construction. *Reswick*, 446 B.R. at 367-68 (quoting and following *Boise Cascade Corp. v. U.S. E.P.A.*, 942 F.2d 1427, 1432 (9th Cir. 1991)).

### 4.    *Problems with including only some "property"*

Some courts attempt to cure the problem just described by interpreting the phrase "with respect to the debtor" to mean not only with respect to the debtor *in personam* but also with respect to *property of the debtor*, while somehow excluding *property of the bankruptcy estate*. *See Reswick*, 446 B.R. at 366 (citing cases). But there is nothing "plain" about that interpretation either. Other provisions of the Bankruptcy Code at least arguably favor including *all* property, so at the very least there is an ambiguity. *See generally* 11 U.S.C. § 102(2) (the phrase "'claim against the debtor includes claim against property of the debtor"), § 541(a)(1) (estate generally includes all property of the debtor), *and* § 1306 (property of estate generally includes property that the debtor acquires postpetition).

Moreover, as *Reswick* points out, interpreting Section 362(c)(3)(A) to apply to the debtor *in personam* and also property of the debtor but *not* property of the estate appears to render the statute devoid of any practical effect. Under that reading, creditors still could not pursue a debtor's postpetition earnings or pre- or post-petition property, all of which become property of the estate. Thus, it is not clear what, if anything, creditors could do. *See Reswick*, 446 B.R. at 368 & nn.5-6.

Perhaps the statute would apply in rare and bizarre hypothetical situations. But that in itself would call into question whether the proposed meaning is "plain."

### 5.    *A more natural reading of the full sentence*

Even ignoring all of the foregoing problems, the statute on its face has an alternative, more natural reading. The statutory sentence at issue provides that "if a single or a *joint* case" (emphasis added) is filed by or against a debtor, and if a prior case was dismissed in a certain manner within one year, then the stay shall terminate with respect to "*the* debtor" (emphasis added) – not *both* debtors, but "the" debtor. The most natural reading is that Congress was singling out "the" debtor who filed the previous case within a year, as distinguished from that debtor's spouse, because Congress was specifically targeting repeat filers. *See Reswick,* 446 B.R. at 367 *et seq.* In other words, based solely on the statute itself and without any reference to legislative history, the most natural reading is the one adopted by *Reswick*.

Alternatively, the *Reswick* reading shows that at the very least the statute is capable of different reasonable interpretations. Therefore, as an alternative basis for its holding, *Reswick* appropriately examines the legislative history.

### *6.    Legislative history and policy considerations*

There is scant legislative history. But, without repeating the analysis in *Reswick*, what history there is supports the holding in that case. *See Reswick*, 446 B.R. at 370-73.

It is true that Congress, in its apparent eagerness to throw the book at debtors who abuse the bankruptcy system, may have largely missed its target and instead harmed creditors and honest debtors. As *Rinard* points out, terminating the automatic stay can promote a "creditor race to the courthouse" and can undermine two "overarching premises of federal bankruptcy law -- a fresh start for an honest debtor and equal treatment among classes of creditors." *See Rinard*, 451 B.R. at 19.

It is also true that this case illustrates at least one if not both of those concerns. On the present record the debtors appear to be the type of honest but unfortunate debtors for whom the fresh start of the Bankruptcy Code is intended. In addition, it is not clear that Fiscal CU's race to foreclose is in the best interests of another creditor – specifically, an immediate foreclosure might prejudice the first deed of trust holder, which might prefer an ongoing stream of payments from the debtors secured by the Home that appears to be worth well in excess of its debt.

But Congress focused on different policy concerns when it added Sections 362(c)(3) and (4). Its paramount concern was to prevent abuse by debtors who are repeatedly in and out of bankruptcy. *See Reswick*, 446 B.R. at 370-73.

In addition, there is a potential remedy in many cases for the collateral damage described in *Rinard*. That remedy is to dismiss the second bankruptcy case without prejudice to the debtors immediately filing a third bankruptcy case. In such a third bankruptcy case, the debtors or any other parties in interest could file and serve a motion requesting an immediate order that the stay take effect pursuant to Section 362(c)(4)(B).

That is not a perfect solution. Not only is a dismissal followed by a third bankruptcy case expensive, but the foreclosure might have already occurred, or there might be so little time before foreclosure that it is not realistic to seek and obtain

imposition of the automatic stay. Another problem might be that, absent a memorandum decision such as this one, the dismissal of the second bankruptcy case could be misinterpreted as a determination by the Judge in the second bankruptcy case that the debtors should never have been in bankruptcy. Yet another problem might be that the same factors that led to missing the 30-day period in the second bankruptcy case (under Section 362(c)(3)) could lead to missing the 30-day period in the third bankruptcy case (under Section 362(c)(4)) – creditors in particular might not realize until too late if it would be in their own best interests to seek imposition of the automatic stay.

In short, the problems identified in *Rinard* are very real, and it is regrettable if Congress made a poor policy decision. But I believe I would overstep my authority if I were to attempt to correct such a perceived policy error in a manner contrary to my reading of both the statute and the legislative history.

### 7.    *Conclusion as to Section 362(c)(3)*

The most natural reading of the statute is as described in *Reswick*. Alternatively, at the very least the statute is capable of different reasonable interpretations, and the legislative history favors *Reswick*. For the foregoing reasons, there is no longer any automatic stay in this second bankruptcy case, so Fiscal CU is not stayed from pursuing its nonbankruptcy remedies against both the debtors and the Home.

### D.    ***Objections to confirmation, and dismissal without prejudice***

Both Fiscal CU and the chapter 13 trustee have objected that the plan is not feasible, at least absent resolution of the foregoing issues favorable to the debtors. I agree. *See* 11 U.S.C. § 1325(a)(6) (confirmation requires that debtors "will be able to make all payments under the plan and to comply with the plan").

Because the automatic stay has terminated under Section 362(c)(3), there is sufficient danger that the Home may be foreclosed upon that I cannot make a finding that the debtors will be able to comply with the plan. In addition, Fiscal CU and other creditors may be able to garnish the debtors' wages, and pursue other nonbankruptcy remedies. Therefore it appears that the debtors will have neither the ability nor the incentive to complete their existing plan.

In addition, I am not persuaded that the debtors could amend their chapter 13 plan in any way that would make it confirmable in this case over the opposition of Fiscal CU, and given this history of their disputes I am not persuaded that there is any realistic

possibility that this is likely to change.  Accordingly, there is cause for dismissal of this second bankruptcy case, both in response to the chapter 13 trustee's and Fiscal CU's objections to confirmation and on the Court's own motion under 11 U.S.C. § 1307(c) and (c)(5).  I will issue a separate order dismissing this case.

That dismissal can be either with or without prejudice.  Under Section 109(g), no individual may be a debtor under the Bankruptcy Code for a period of 180 days after dismissal if the case was dismissed "for willful failure of the debtor to abide by orders of the court, or to appear in proper prosecution of the case," or if the debtor "obtained a voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 …."  11 U.S.C. § 109(g).  I find and conclude that under these provisions it is inappropriate for me to bar the debtors from filing another bankruptcy case and seeking any appropriate relief in that case, including imposition of the automatic stay under Section 362(c)(4).

### *E.   Conclusion*

For the foregoing reasons, I will issue separate orders: (1) **DENYING** Fiscal CU's motion for relief from the automatic stay under 11 U.S.C. § 362(d)(1) and (d)(4), but **CONFIRMING** that the stay has already terminated automatically under 11 U.S.C. § 362(c)(3) and (j); and (2) **DISMISSING** this bankruptcy case, without prejudice.

###

DATED: January 31, 2012

_____
United States Bankruptcy Judge

**NOTE TO USERS OF THIS FORM**:
1) Attach this form to the last page of a proposed Order or Judgment. Do not file as a separate document.
2) The title of the judgment or order and all service information must be filled in by the party lodging the order.
3) **Category I.** below: The United States trustee and case trustee (if any) will always be in this category.
4) **Category II.** below: List ONLY addresses for debtor (and attorney), movant (or attorney) and person/entity (or attorney) who filed an opposition to the requested relief. <u>DO NOT</u> list an address if person/entity is listed in category I.

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) _**MEMORANDUM DECISION (1) DENYING RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362(d) BUT CONFIRMING THAT THE STAY HAS TERMINATED AUTOMATICALLY UNDER 11 U.S.C. § 362(c)(3) AND (j), AND (2) DISMISSING THIS BANKRUPTCY CASE WITHOUT PREJUDICE**_ was entered on the date indicated as "Entered" on the first page of this judgment or order and will be served in the manner indicated below:

**I. SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of _**1/30/12**_, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

- Gene W Choe    maria@choicelaw.org
- Kathy A Dockery (TR)    efiling@CH13LA.com
- A Lysa Simon    culawyers@earthlink.net
- Ramesh Singh    claims@recoverycorp.com
- United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

☐ Service information continued on attached page

**II. SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

**Debtors:**
Jose Gilberto Hernandez
Maria Jimenez
4916 Lincoln Ave
Los Angeles, CA 90042

☐ Service information continued on attached page

**III. TO BE SERVED BY THE LODGING PARTY**: Within 72 hours after receipt of a copy of this judgment or order which bears an "Entered" stamp, the party lodging the judgment or order will serve a complete copy bearing an "Entered" stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*August 2010*    **F 9021-1.1.NOTICE.ENTERED.ORDER**